for our second oral argument. We have 20-4116. Let's see, we're missing an attorney still, Mr. Lunn. No. Good. Okay, there you are. We'll now start with 20-4116, U.S. v. Shamo. Shamo, Mr. Lunn, are you ready to proceed? Yes. Can everybody hear me, please? Yes. Good. May it please the court, William Lunn for appellant Aaron Shamo. This case is troubling. The government charged appellant, who is a very young man, under an enhancement statute that, if he were convicted, would bring about a mandatory life sentence. The statutory provision in that statute required proof of a specific chemical compound, N-Phenyl-N-1-2-Phenyl-Ethyl-4-Piperidinyl-Propanamide. The government never presented any evidence whatsoever about that chemical compound during the trial. A prosecutor who looked at this case said it very well. If you want to put someone, if you want to charge someone with a sentence that may bring about life in prison, you need to make a checklist of all the things in the statute that you're required to prove. And as you proceed through the trial, you need to check each box. The prosecutor in this case apparently had no checklist. And if he did, the box was not checked with regard to the chemical compound required by the statute. Well, let me ask you a few questions, Mr. Lunn, on that. There was a lot of testimony using the word fentanyl. Is that right? Yes. The question is whether the term fentanyl used throughout the trial was the same as the specific chemical compound. Is that correct? No, not necessarily. Fentanyl is just a so-called brand name. It's a common term. The question though, but it was used, that word was used throughout the trial, right? Yes. So the link that's missing, as I understand it, is to link the use of the word fentanyl throughout the trial to the specific chemical compound stated in the statute. Yes. Okay. What about instruction 27? That provides the link, does it not? I don't believe it does. Let me read it to you. Section 27 states, several of the following instructions will refer to controlled substances. Fentanyl, open parenthesis, also referred to as N-phenyl-N-1-2-phenolethyl-4-hyperadenyl, which is the statutory language, is a controlled substance within the meaning of the law, period. The judge has instructed the jury that fentanyl, which was a word they heard throughout the trial, is the same as the chemical in the statute, and you did not object to that instruction? Why can't the judge either take judicial notice or just accept a definition that identifies the word used throughout the trial as the chemical described in the statute, particularly when the defense counsel doesn't object? Well, under Teague, he's not required to object, and that's not any kind of an admission that the government has proved its case with regard to that term. It isn't? No. It's definitely an admission that the word fentanyl, which the jury's been throughout the trial, is identical to the chemical stated in the statute. What am I missing there? It's only the judge making that statement and an instruction. There's been no witness who has ever discussed the chemical compound that's required. There's been no expert report that provides that. Isn't the instruction the equivalent to a stipulation? No. The parties can't agree to a stipulation saying this word means this? Teague says that an instruction itself is not an admission, and so the answer is no under this court's ruling in Teague. The government is required to prove its case. The government is required to present evidence of a specific compound. We understand that, Mr. Lund. Are you saying that in order to satisfy your concern, every time throughout this trial when the word fentanyl was used, that instead the chemical name should have been used? Is that your view? I'm saying that if you want to or distributing a drug that qualified under the enhancement statute, then you needed to present evidence that that drug was N-phenyl-N-1-2-phenylethyl-4-piperidinyl-propanamide. Whenever the term fentanyl was used, it was inadequate. You had to use the chemical name. That has to be your position, isn't it? For purposes of the enhancement provisions in count one and count five. So for instance... I want to understand. In order to meet your concern, when the word fentanyl was used, you had to also use the chemical name, the technical name. Isn't that correct? In some instances, you had to if you wanted to prove counts one and five. If you wanted to prove that he was importing a controlled substance, fentanyl under 21 U.S.C. 812 covers the broad range of chemical compounds. There are dozens of chemical compounds that are You raised sufficiently of the evidence. Your motion for a quorum. Yes. What was the question? Intentionally abandoned that argument. You told the jury that we sort of agree with everything that the government said he did, but he didn't do... he was not the leader. Wasn't that the point? I have on page five of my reply brief exactly what the motion for judgment of acquittal covered. It covered basically three things. The first sentence, or actually the second sentence, is the government has failed to present sufficient proof from which any rational juror could conclude beyond a reasonable doubt that Mr. Chamot knowingly and intelligently violated 21 U.S.C. 848. And that's absolutely correct because they never presented any evidence of N-phenyl-N-1-2-phenyl ethyl-4-piperidinyl-propanamide. I didn't understand the question. I'm sorry. There's a bad echo. Again, the chemical compound that's required by the enhancement statute is found nowhere in any evidence presented by the government. The most that you can find is simply the reference to the term fentanyl, but fentanyl covers a number of chemical structures. And the statute requires proof of only that one specific chemical compound. And that was never proved. No evidence whatsoever in this record proves that. Mr. Lund, Judge Murphy, let's let Judge Kelly and then I'll turn to you. Go ahead, Judge Kelly, we didn't hear your question. Can you repeat what you were saying? I thought you were just asking a question and I don't think any of us heard it. Would you repeat the question you just asked or maybe you didn't ask a question? I'm not following the argument. The sound was going in and out. Should I go slower? If I was very slow, would that help? Let me ask you this. Are you saying... Yes. His statement... His statement was that there was fentanyl involved in the case. That's all that he ever said. And that certainly put my client at risk for a conviction under importation of a controlled drug or a few of the other counts that were included in the indictment. Ms. Flynn, are you saying that his lawyer at trial had no obligation to object to this instruction number 27 that Judge Hartz referred to? No. He has no obligation to do so. And the fact that he doesn't do so under T is not an admission to the statement that's made in the instruction. Didn't the lawyer for your client propose a very similar instruction in his proposed instructions to 27? The lawyer for my client never used the term N-phenyl-N-1-2-propanolethylpiperidinylpropanamide. Never used that term. There was never an abandonment of the government's requirement to prove that point or to make that link. That never happened. What if the lawyer, after hearing the instruction during the instruction conference, said, yeah, I'm okay with that. What would happen then? Doesn't that mean that that lawyer agreed to it? No. Because again, that's not proof of the case. And under T, that doesn't constitute an admission. Isn't this jury instruction an instruction as to the process that the jury can use in analyzing and viewing the evidence? And that's all it is. It's just a process instruction. Isn't that a fair characterization of it? The judge may issue the instruction, but again, it's not proof in the case and it's not proof. I understand that. Get off that. What we're talking about is jury instructions. Yes. Wasn't this a process instruction that told them how they could proceed, told them the jury? There are obviously instructions that include the language that has the chemical compound in it. There is no instruction, however, that says that the chemical compound, that that is exclusively fentanyl. And if Congress had wanted to use fentanyl in the enhancement statute, it could have done so, but it didn't do so. And so the government was required to check the box and it didn't do that. It isn't every compound that includes a measurable amount of fentanyl, an analog of fentanyl. Yes. So if they use the word fentanyl, then they satisfied the requirement in 841B1B6 for an analog of fentanyl. Except that he's only charged under the first provision of which is requiring them to prove the specific chemical compound that we've listed. And there are many different compounds that may have chemical structures that are similar to that compound that the government was required to prove. But that doesn't mean that they're that same compound. Government had to prove that compound and it didn't do so. I'd like to reserve the remainder of my time. Well, I'd like to ask a question on another issue, just to clarify something. You complained about authentication of the screenshots. Yes. In what sense were they not authenticated? They were authenticated, were they not as screenshots from a website at a particular time? Is there something else that you're saying was required? Yes. And I've cited several cases there that involved... I'm not interested in your case law. I'm interested in what your argument is. They're not trustworthy. What was missing from the authentication? There is no person who's able to sponsor those... No person was presented to sponsor those screenshots. There is nothing to indicate that the compilation... Let me stop you there. If something appears on their website, then that's sponsored by the company whose website it is, is it not? So all the authentication needed there was to say this was on their website. This was shown on their website. Is that not enough?  Let me finish the question, please. Isn't that enough to authenticate? No. This was a statement... Well, wait. Authenticate... There are a million things you might need to authenticate. That's what I'm trying to find out. What is it that was missing? Doesn't the testimony that this appeared on that company's website enough to authenticate that this was a statement sponsored by that company? No. What's missing? A person who could say that. We don't know where the information... We know that there's a website called AlphaBay, but we don't know anything about the people who run that site. We don't know whether anything is done in a legal or an ethical manner, and we don't know whether the transactions necessarily occur. That's the first case. Wasn't this simply a data point created at a point of sale and then passed on to the third party database? Again, there's no person from AlphaBay to say that. There was no statement involved. But there's no person from AlphaBay who can establish that whatever is said by persons who have allegedly purchased drugs or the amounts of the transactions, there's no person available that can be confronted who you can ask whether or not this was done in a reliable manner. It was authenticated. The person testified, they took over the website. And so the Ferris, Jackson, and First cases all find that in the situation of an internet site, that it's not adequate for even authentication under Rule 901. Where does it become hearsay? Where does it become hearsay? Where does it become hearsay? Yes, it's simply at the point of sale that was recorded on the website. Yes, but we don't know. We don't have a person who can establish that from AlphaBay. There's no person who establishes that. We don't know that. Have you read the Shannon case? Have I read the Shannon case? I believe I have not. It's not in my list of cases. All right. Thank you. Thank you, Mr. Lund. Thank you. Ms. Williams. Good morning. I may please the court. Jennifer Williams for the United States. Mr. Shamo ran an international drug trafficking organization that manufactured and sold through the dark net numerous controlled substances, in particular, fake OxyContin pills made with the dangerous synthetic opioid fentanyl and counterfeit Xanax tablets. Following a multi-week trial, a jury convicted Mr. Shamo of numerous drug trafficking offenses, including being a and of conspiring to distribute over 12,000 grams of fentanyl. And it's this continuing criminal enterprise conviction that carried with it the mandatory sentence of life without parole. There are a number of issues that Mr. Shamo raises on appeal. I am happy to address any that the court has questions about, but I'll start with... Okay. Ms. Williams. Yes. My question is, is it for conviction under the continuing criminal enterprise statute without an enhancement, what was necessary to prove was that there was a, with all the elements, but that the compound involved was something called fentanyl, at least fentanyl in measurable quantities. Is that correct? Yes. So it's only for the enhancement that the chemical name is used in the statute, correct? Yes, that is correct. It's in the penalty provision of 841. All right. Let me ask you this. If somebody uses the expression fentanyl, that would include, wouldn't it, anything, any compound, any substance that contains fentanyl in measurable quantities, correct? Yes, that is correct. But I'd like to clarify something. Fentanyl is, as used by Congress in the Controlled Substances Act and the sentencing guidelines, is this specific chemical compound referenced in the penalty provision of 841. It does not refer to fentanyl analogs, which are specifically identified as analogs of fentanyl in both the CSA and the sentencing guidelines. And if the court looks at the definition of controlled substances, which is found in 21 U.S.C. 812, it lists fentanyl. And then it lists in supplements, as Congress has added substances that are controlled, they're added in the Code of Federal Regulations, analogs of fentanyl are listed separately. So fentanyl, Congress in the Controlled Substances Act and in the sentencing guidelines, uses the term fentanyl synonymously, interchangeably, with this specific chemical compound. And in fact, Mr. Shamo's position seems to be that this chemical compound is not fentanyl, it's something else, but this specific chemical compound doesn't appear in 812 or in the CFR provisions at all. So under Mr. Shamo's analysis, this specific chemical compound actually isn't a controlled substance under the Controlled Substances Act. It doesn't appear there. And that, of course, makes no sense. What Congress did with fentanyl in particular was appear to use these terms interchangeably. Fentanyl equals this specific chemical compound. Fentanyl analogs, which are not an issue in this. Are you saying then that the jury instruction number 27 was sufficient to make that plain and clear to the jury? Yes. And it's not just jury instruction number 27. From the get-go, the prosecution made clear in the indictment, it said fentanyl, and it linked fentanyl with this specific chemical compound. So it made clear from the very beginning that these two terms meant the same thing. And not only jury instruction number 20 instructions, I believe counsel said something about how Mr. Shamo's counsel below never used the chemical compound, but he did. He proposed jury instruction number 20, I believe. And in jury instruction number 20, his proposed jury instruction. And his proposed jury instruction used the term fentanyl. And then in parentheses, it said, also referred to as the chemical compound at issue. And then his proposed jury instruction number 20. It was. It's what ended up becoming jury instruction number 27. But the point here is that he actually used the chemical compound. And he proposed this jury instruction, which both goes to our argument about not only was there forfeiture here, but there was actual waiver. There was intentional waiver of this argument. But also, all the parties below accepted rightly that these terms mean the same thing. And in fact, during the jury instruction conference, counsel for Mr. Shamo said initially, why don't we just call it fentanyl? Yes, exactly. Yes. I have a question, Ms. Williams, about how clear it was. You mentioned there are lots of things that show that at least the government considered the chemical compound to be the same as but there was nothing presented to the jury other than the instruction that identified fentanyl with the specific chemical compound. Am I correct about that? I couldn't, I'm not aware of anything in the record of what went to the jury that identified the two. The instruction may well be sufficient, but you said something beyond that. You were and I'm not... Well, the charges in the indictment specifically linked the two. And that was read to the jury? I believe it was, although I don't have a specific site for that. Was there anything else? That specifically linked... That went to the jury, not... Well, the jury instructions, the jury instructions... Yeah, that's what I said, aside from the jury instructions. You said there was plenty besides the jury instruction that showed that everyone was considering fentanyl to be the same chemical, but what we're interested in is what the jury heard. Well, the prosecution made it very clear to the jury that when discussing what the jury had to find for this life sentence enhancement, that the underlying felony charge to support that life sentence enhancement was the distribution of over 12,000 grams of fentanyl. Right. And so... That's the point. No, no, maybe I'm not being clear. The whole argument Mr. Lund's making is the jury may have well thought, well, certainly did think that the defendant was distributing something called fentanyl. The question is, did the jury find that the substance Mr. Shamo was distributing was the statutory chemical compound? And the thing I can find that went to the jury identifying fentanyl with the statutory compound was the instruction. You said there was plenty, as I understood you, you said there was plenty of that, plenty else in the record. What was that? You mentioned the reading of the indictment. Anything else? Well, the specific chemical compound was not named by any of the DEA chemists, but what was made clear to the jury, and they specifically, they did check a box that found Mr. Shamo had distributed over 12,000 grams of fentanyl for this penalty provision. So they clearly understood that this chemical compound referenced in the penalty provision was fentanyl. And as was explained to them in the jury instruction, if nowhere else, our position is that the jury instruction specifically instructed them that the term fentanyl equals this chemical compound. Ms. Stephens, could I direct your attention to the screenshots? Yeah. Yes. On the hearsay issue, if we bypassed your claim that because there is no declarant, it's therefore not hearsay, and went another direction, aren't these, is there a sufficient foundation laid for these to be business entries, and therefore an exception to hearsay? It wasn't an exception that we relied upon. You're so reliant because there is no one, no human that is declaring this, that these things are still therefore not hearsay, correct? Well, we also rely on them as the admission, either the admission or the adoptive admission of Mr. Shamo himself. Assuming we don't accept the adoptive admission, is your sole basis that it's not hearsay is because there is no human declarant? Well, there are multiple aspects of these screenshots. There's the information as to the drug quantity and type. And then there is the information, the actual feedback. Okay. Set aside the feedback. Let's focus on the quantity. Aren't those screenshots a statement as to quantities, and therefore they need to be considered under the hearsay rule, that they themselves are statements? Well, but what they are, as to the quantity, they're statements authored by Mr. Shamo, who created the listings. And so what appears in the feedback screenshot itself is just a record of the transaction. So Mr. Shamo authored the listings. He then shipped out the amount because these are completed transactions. Let's just take the circumstance of just a ordinary legitimate business, say a car dealership. And the car dealership has business records. And you try to get the business records in as an accepted hearsay, correct? Right? Yes. Are you also saying those business records are admissions of the individuals who run the defendant? Here, Mr. Shamo is the party, and he authored the listings. And so they're his admissions. They may not be the admissions of- In the automobile case, if the defendant is the automobile company, you don't have to qualify the underlying documents as exceptions under the business records exception. All you have to do is establish that they are documents of the business. And therefore, according to your theory, they would be admissions, correct? Well, but all we're talking about here is the portion of the listings that he created. And so he's not Alphabet, but he is the party opponent in this case. And those are the listings that he created, that he both created them. And then because they're completed transactions, the amount of drugs ordered was then sent out to complete the transaction. I'd also- Excuse me, Judge Kelly had a question. Judge Kelly, would you repeat your- Why doesn't this fall outside of Rule 801 because it's data created at the point of sale and there is no person that's spoken? And the screenshot was just of the page that showed up on the website. Well, we- I don't understand. Under our case of U.S. versus Channon in 881, February 3rd, 811, it was a very similar situation with data that was created as a result of sales of items. All right. Why is this even a hearsay issue? Well, it's only a hearsay issue in that the amount, the quantity of the drug and the amount of the drug listed in- Out of court, don't you? Excuse me? If it's calculated, if it's created as just a direct result of the sale and the record of the sale, it's created by a machine. Well, that is part of the point that we made in the brief. It is created by the machine. And as to the specific issue of the amount and the quantity, that was created by Mr. Shamo himself. And so there's no concern as to both the specific quantity listing or the record of the transaction as a whole, which is simply a record of the transaction. I see my time has expired. As I would just like to make one brief point on this hearsay authentication issue. Very briefly. Very brief. All of this evidence as to the amount of fentanyl was actually brought into the courtroom for the jury to see. The drugs on the table that the jury saw, as supported by the testimony of the DEA chemists and their chemical analysis reports, which are found in Mr. Shamo's appendix, are all sufficiently independent evidence to establish this element. And so the court does not need to reach this issue at all. Okay. So this, the screenshots were the purpose of offering the evidence was to establish the quantity of drugs. Is that the sole reason for it? Well, that is the reason that Mr. Shamo takes issue with. Okay. That was the main reason. Yes. Okay. And you're saying that the quantity was that the jury could see. Yes. Over 12,000 grams of fentanyl. This was testified to there's a testimony of numerous DEA chemists and in the appendix of Mr. Shamo's brief, that includes all of the chemical analysis reports from the drugs that were actually seized during the investigation. And if you add, if the court adds up those amounts, it well exceeds 12,000 grams of fentanyl. I have another question though. I'm concerned about the final argument by counsel. What's the purpose of inflaming the jury about the drug crisis, the opioid crisis, the fentanyl crisis? I could not see any proper reason for the variety of these statements that are raised in the defendant's brief. And unless I hear a good reason for it, we've got to do something to stop this. This is not appropriate closing argument. Would you respond to that? Well, yes. In a couple of with opioids. Mr. Shamo ties that to his argument about allegedly improper testimony of Agent Keys, which we address in our brief. The district court found that there was no improper testimony, that the prosecution didn't act improperly in questioning Agent Keys. And that all of the questioning was in line with the party's prior agreement about how the questioning of Agent Keys was conducted. So to the extent Mr. Shamo ties those two issues together, I don't believe there's justification. But that wasn't my point. I wasn't talking about that. What about just that sort of comment and final argument? Well, and I think the court has to look at that comment. He was charged. I mean, he attempts throughout his brief to minimize the conduct with which he was charged. But he was charged with being the principal leader of a massive nationwide continuing criminal enterprise that distributed massive amounts of very dangerous drugs. Well, that would be fine to do that. I won't pursue this further. But I would hope that if the U.S. attorney doesn't instruct the AUSAs that there are limits to what you can argue in final argument that maybe the attorney general will have to provide some instructions to AUSAs. But it looked over the line to me. Maybe there's a justification I missed. But are you saying, Ms. Stevens, that that statement made closing argument was A-OK? Well, also, that particular argument wasn't objected to at the time. So I'm saying it wasn't clearly erroneous. It wasn't so clearly unfairly prejudicial. I understand there was no objection. Do you think the statement was A-OK? I think in Mr. Shamo's brief, it is tied in with these other unjustified accusations against about prosecutorial misconduct, which aren't justified. Um, is that state is what you just said a yes or a no to my question? Was that statement about the condition in this country? A-OK? Well, yes or no? If you're not willing to say yes, I don't know how we need to make it. How do we how do we teach the attorneys that they're not supposed to do that? Do we reverse? Well, no, no. I mean, if you're not if you're not willing to accept, if you're not willing to answer Judge Murphy's question, it makes me very uncomfortable. Well, I don't think I well, it's a little hard to answer it because you and I don't think it's unfairly prejudicial in light of all in light of the scope of the continuing criminal enterprise with which he was charged, which was which was nationwide. And in light of there was a death resulting count, the jury hung on that, but he was charged with that. These were very serious charges. OK, you said I think it was unfairly prejudicial, which is the standard. No, I don't. OK, OK. You've said it was not unfairly prejudicial and it was unobjective. There is another item here is was it appropriate to say yes or no? Excuse me, Judge Murphy, I cannot understand your question. Would you please repeat it? Is the statement an appropriate statement regardless of prejudice and regardless of objection? Well. But thank you. I don't see how I can answer that. Thank you. I think you're referring to the standard. I think it's unfairly prejudicial. Yeah, yeah, yeah. I think you've answered it really. Yeah. Thank you, Mr. Lund. I'm going to give you. Thank you. I really don't think you need more than two minutes. I'll try to be fast. Yeah, I first of all, I don't think that it's plain error because at the time that Judge Kimmel was required to review the earlier incident involving the societal alarm that involved the people in the courtroom, he still had to review the record as a whole. And so therefore, he had to consider the statements that were made in closing arguments. And so I think this is an abuse of discretion, not a plain error issue. With regard to the fentanyl issue, Congress obviously had the opportunity to transpose the term fentanyl from 21 U.S.C. 812 onto the enhancement statute, and it didn't do that. The grammatical structure of the sentencing guidelines and the manner in which Judge Kimmel gave his jury instructions, which is that you have the term fentanyl followed by the chemical compound, is different from the grammatical structure that's in the enhancement statute. So for instance, you have fencyclidine and then you have parentheses PCP. Congress could have simply put in the statute the chemical compound that's listed there, and then they could have put in parentheses fentanyl after that, but they didn't do that. My thought is that if you have the term fentanyl first, then you're referring to a type of fentanyl that is involved in your evaluation. And so the sentencing guidelines, which is the other place where this comes in, or for that matter, the indictment or the jury instructions, the grammatical structure is that way. And so it points to the proof of the chemical compound, not that that compound is synonymous with fentanyl. Thank you, Mr. Leung. Counsel? Judge Kelly? Yeah, I think the record has been stated. I think it's clear that, A, the issue was never raised, it was never objected to. The motion that counsel referred to in the argument specifically states that Mr. Shamo knew that this was fentanyl, he testified to, and it was agreed from the beginning of this case that they didn't have to go into all of the chemical calculations. It's clear through the record that everybody sat down and agreed that rather than go through the chemical equation, we're just going to to the term fentanyl. And to say otherwise is just not correct. Judge, I just simply have to respectfully disagree. I don't know anywhere that Mr. Skordas, who represented the defendant at the trial, ever agreed that the chemical compound fentanyl was applied to the chemical compound that the government had to prove. It's just not in the record. And there's no witness, there's no report from a chemist that uses the chemical compound. It's just not there. Counsel's opening statement to the jury was that, quote, Aaron is owning what he did. And that was the whole thrust of the defense here was that the government failed to present evidence to show a continuing criminal enterprise, failed to show that Mr. Shamo was part of a continuing series of violations, and that he was a leader. There was never a mention in your motion or in any other comment that the substance involved had not been proved to be fentanyl. You didn't raise it in your motion for acquittal. You said you did, but you didn't. I've got it right here in front of me. And I just think we've spent way too much time on talking about stuff that's really not relevant. All I can do is respectfully disagree. There's just no place that the defense attorney at trial ever conceded that for purposes of the trial, a reference that he made to fentanyl meant that the chemical compound listed in the enhancement statute, that it applied to that. It could have applied to any number of a dozen, maybe hundreds of other different analogous chemical structures. And that was enough to have him found guilty under the importation statutes and other statutes that were alleged in the indictment. And he owned up to that. Thank you, counsel. Counselor excused. Case is submitted.